IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Daniel J. McCarthy, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:07-cv-92 |
| ) | |
| Michael J. Astrue, Social Security ) | |
| Administration Commissioner, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Daniel J. McCarthy (hereinafter "McCarthy," "plaintiff," or "claimant") initiated this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  (Tr.  20-39). Both parties have moved for summary judgment.  (Doc. #7, Doc. #11).  For the reasons stated in this report, the magistrate judge finds the Administrative Law Judge failed to properly develop the record and **RECOMMENDS** this action be remanded for development of further evidence and rehearing before a different ALJ.

Background

McCarthy protectively filed an application for disability insurance benefits on September 23, 2003, under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  (Tr. 202-05).  He alleged a disability onset date of April 30, 2002.  (Tr. 202).  His application was denied initially and on reconsideration.  After a de novo hearing, Administrative Law Judge ("ALJ") Holloway

1

issued a decision on May 13, 2005, finding that McCarthy was not disabled within the meaning of the Social Security Act. (Tr. 61-74). McCarthy sought review of the ALJ's decision. On January 27, 2006, the Appeals Council (AC) granted his request for review, vacated the hearing decision, and remanded the case for further proceedings. (Tr. 75-76). In particular, the AC found that the ALJ decision "does not contain an adequate evaluation of the treating source opinion" of Hoadley H. Harris, M.D., and that ALJ Holloway failed to rule on McCarthy's request for subpoenas to Drs. Reardon and Buettner. (Tr. 75). The AC directed the ALJ on remand to "give consideration to Dr. Harris' opinion," "rule on the subpoena request," and "if warranted by the expanded record, obtain supplemental evidence from a vocational expert." (Tr. 75-76).

A supplemental de novo hearing was held before ALJ Geyer on March 12, 2007. ALJ Geyer issued a decision on April 19, 2007 finding plaintiff was not disabled. (Tr. 20-39). The AC subsequently denied McCarthy's request for review (Tr. 9-11), making the decision of the ALJ the Commissioner's final decision.

McCarthy alleges he became disabled on April 30, 2002 due to increasing back pain and depression. He suffered a back injury while in military service, which led to lumbar spinal fusion in 1991. In addition, he has a history of arthritis in his spine and hands, degenerative joint disease, sleep problems and depression. (Tr. 385-413, 530-60, 562-76, 716-84). Treatment has consisted of narcotic analgesics, anti-inflammatory drugs, antidepressants, and epidural steroid injections. (Tr. 385-413, 558). ALJ Geyer made the following finding of severe impairments, to which there is no dispute:

> multilevel disc degeneration with no evidence of cord compression (status post spinal fusion at the L2-3 level in 1991); multilevel osteophytes involving the entire axial skeleton; fibromyalgia/myofascial pain syndrome; obesity; osteoarthritis first CMC joints bilaterally; depression, NOS, in connection with chronic pain; anxiety disorder, NOS, and chronic pain syndrome. 20 CFR 404.1520( c).

(Tr. 24). Claimant does dispute ALJ Geyer's findings that claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment, that he has the residual functional capacity to perform light work with some limitations, and that there are jobs in the national economy claimant can perform within his limitations. These findings led to the ALJ's conclusion that claimant is not disabled. (Tr. 25-39). Claimant asserts the ALJ's findings are not supported by substantial evidence because the ALJ failed to develop an adequate record.

## Standard for Review

Upon review of the pleadings and transcript of the record, the court can affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). To affirm the Commissioner's decision, the court must find that substantial evidence appearing in the record as a whole supports the decision. See id.; Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989). "Substantial evidence 'is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" Sultan v. Barnhart, 368 F.3d 857, 862-863 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). The review of the record is more than a search for evidence supporting the Commissioner's decision; the court must also take into account matters that detract from the ALJ's findings and apply a balancing test to

weigh contradictory evidence.  Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991); Sobania v. Secretary of Health & Human Services, 879 F.2d 441, 444 (8th Cir. 1989) (citation omitted).

The ALJ is not an adversary of the claimant, Reeder v. Apfel, 213 F.3d 984, 987 (8th Cir. 2000), but rather a neutral who "bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004).  See also Reeder, 213 F.3d at 987.  This responsibility extends to cases, like this one, in which the claimant is represented by counsel. Snead, 360 F.3d at 838.  When the ALJ fails to develop an adequate record, the ALJ's findings will not be supported by substantial evidence, and remand for development of further evidence and rehearing will be necessary.  Id. at 839.

Section 205(d) of the Social Security Act, 42 U.S.C. § 405(d), vests the Commissioner with power to issue subpoenas requiring attendance and testimony of witnesses and the production of evidence.  The Commissioner's regulations provide: "When reasonably necessary for the full presentation of a case, an Administrative Law Judge or a member of the Appeals Council may, either upon his own motion or upon the request of a party, issue subpoenas for the attendance and testimony of witnesses . . .." 20 C.F.R. § 404.926.

In Richardson v. Perales, 402 U.S. 389 (1971), the Supreme Court held that the written report of an examining physician,

> despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, <u>when the claimant has not exercised his right to</u>

<blockquote>
subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.[1]
</blockquote>

Id. at 402 (emphasis added). The ALJ has discretion to determine the procedure at the hearing, id. at 400, citing 20 C.F.R. § 404.927, but failure to issue a subpoena when the proposed testimony may "affect the decision," may be an abuse of discretion, Taylor v. Weinberger, 528 F.2d 1153, 1156 (4th Cir. 1975), and even a denial of due process. Treadwell v. Schweiker, 698 F.2d 137, 144 (2nd Cir. 1983).

Summary of Conclusions

The magistrate judge concludes that the ALJ failed to properly develop evidence to support his conclusion that claimant was not disabled on April 30, 2002. ALJ Geyer failed to adequately address McCarthy's subpoena requests for Drs. Reardon and Buettner, as mandated by the AC. The court further finds that the ALJ's extensive reliance on Dr. Reardon's opinion, without issuing either of the requested subpoenas, severely hampered claimant's ability to fully present his case. Additionally, the ALJ's failure to issue an interrogatory, and if necessary a subpoena to psychologist Odden, and/or order a medical consultative examination, despite his apparent conclusion that the Odden psychological report was not definitive, demonstrates a serious deficiency in the record, as reflected by the ALJ's own admission that a medical exam may be necessary to develop the record.

---

[1] The Supreme Court relied on several factors underlying its conclusion, including the fact that there was "no inconsistency whatsoever" in the five examining physicians' reports. Richardson, 402 U.S. at 404.

### Request for Subpoenas to Drs. Reardon and Buettner

In advance of his first hearing before ALJ Holloway, claimant requested that subpoenas be issued to Drs. Reardon and Buettner. See letter dated January 25, 2005. (Tr. 116). McCarthy requested an opinion from his original VA treating physician, Dr. Buettner, but Dr. Buettner had retired, so another VA physician who had previously seen claimant, Dr. Reardon, answered the request. Id. Dr. Reardon first indicated an inability to complete the evaluation, but on December 30, 2004, he completed the "Treating Physician Medical Opinion Statement." McCarthy asserted before ALJ Holloway that Dr. Reardon's opinion "is completely at odds with all the objective medical evidence and opinions of previous treating VA and Meritcare doctors." Id. McCarthy identified several medical opinions in the record contrary to Dr. Reardon's opinion that McCarthy could engage in unrestricted light work, as well as Dr. Reardon's disregard of the "decision of the VA itself that has found this veteran to be 100% disabled and incapable of any work." Id.[2] McCarthy argued that certain injustice would occur if Dr. Reardon's opinion were given any probative weight without the opportunity for cross-examination. Id.

ALJ Holloway did not address the subpoena request in any respect. McCarthy raised the issue with the AC in his request for review of the hearing decision, arguing the ALJ erred as a matter of law by refusing to issue the requested subpoenas. (Tr. 339). McCarthy asserted his letter request, dated January 25, 2005, for the doctors' appearances satisfied the requirement of Hallex 1-2-578 that he "state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." 20 CFR §

---

[2]The court recognizes that the disability standards of the VA and SSA may differ somewhat and expresses no opinion on the effect of the VA finding of disability.

404.950(d)(2). Further, McCarthy asserted his request for the subpoenas "stressed the importance of having the doctors present, especially if the ALJ planned to give any 'probative weight' to Reardon's opinion." (Tr. 339). McCarthy further argued to the AC the need for the requested subpoenas:

> It is not only "reasonably necessary for the full presentation" of McCarthy's case but **absolutely essential**, for the ALJ to have issued subpoenas for Mr. McCarthy's VA doctors, Buettner and Reardon. **Every** doctor (including VA Dr. Buettner) **except** VA Dr. Reardon is of the unanimous opinion that Mr. McCarthy is completely disabled from **any** work. For the ALJ to rely exclusively upon VA Dr. Reardon's opinion to the contrary– without requiring Dr. Reardon to be at the hearing for examination– makes a mockery of any notions of due process. Here, the ALJ did not even reference the request, let alone explain why the subpoenas were **not** "reasonably necessary for the full presentation" of Mr. McCarthy's case. Obviously, the subpoena was necessary and the ALJ simply ignored this affirmative and self-imposed requirement of SSA.

(Tr. 339-340) (emphasis original). Upon remand, the AC directed the ALJ to "rule on the subpoena request in accordance with Hallex 1-2-578." (Tr. 76).

McCarthy renewed his request for the subpoenas to ALJ Geyer on November 2, 2006. (Tr. 126-127). McCarthy directed ALJ Geyer's attention to his earlier letter to ALJ Holloway as support for the request, as well as his arguments on appeal to the AC. On February 6, 2007, McCarthy enlisted ALJ Geyer's help in securing an address for Dr. Reardon from the VA, again requesting that ALJ Geyer issue the subpoena to Dr. Reardon upon receipt of the address. (Tr. 165). McCarthy also renewed his request for the subpoena to Dr. Buettner, asserting "her testimony is required to, *inter alia*, determine the credibility and reliability of Dr. Reardon's medical opinion testimony." (Tr. 166). Thereafter, on February 13, 2007, ALJ Geyer wrote to VA counsel requesting Dr. Reardon's address. (Tr. 169). On February 20, 2007, McCarthy renewed his request that the two subpoenas be issued, raising the concern that the deponents may

"have a legitimate excuse for not appearing at the March 12th hearing due to lack of timely notice." (Tr. 186). The next day, February 21, 2007, and prior to receiving the requested address for Dr. Reardon, ALJ Geyer entered an order denying McCarthy's subpoena request, stating:

> Claimant's request for subpoenas to compel attendance of Drs.
> Reardon and Buettner and Ronald Odden, licensed psychologist, at
> the hearing scheduled for March 12, 2007 is denied. The request is
> denied for the following reasons:
> a.   The claimant has not submitted a statement of the important facts
>      the witnesses are expected to prove, and ;
> b.   The claimant has not stated reasons why these facts cannot be
>      proven without issuing a subpoena.

(Tr. 172-73). McCarthy objected to ALJ Geyer's order on February 28, 2007, again calling ALJ Geyer's attention to support in the existing record for the subpoena request and emphasizing the need to address the "obvious discrepancy" between Dr. Reardon's opinion and the 100% disability rating from the VA. (Tr. 178-79). McCarthy again objected on the record at the March 12, 2007 hearing to ALJ Geyer's refusal to issue the subpoenas. (Tr. 933-34). ALJ Geyer responded:

> As, as to your opening statement, counsel, I would only mention on the subpoena
> to the doctors, I think you're getting into extreme light heavy policy issues. If I
> go subpoena any two doctors for your benefit so you can cross-examine them,
> then it seems to me for me to be fair to the Commissioner and to the tax payers
> that Dr. Harris would have to be subpoenaed, too. And pretty soon we have a full
> blown trial. We hold something like 600,000 hearings a year. If we were to have
> full trial type hearings, the system would ground to an even faster halt that it is
> now with us being short of resources. So there's that issue to consider in, in the
> subpoena problems.

(Tr. 937).

On remand from the first hearing, the AC directed the ALJ to "rule on the subpoena request in accordance with Hallex 1-2-578." (Tr. 76). McCarthy argued before ALJ Geyer that

8

"the spirit and the letter of the Appeals Counsel (sic) was that the subpoenas would be honored." (Tr. 933). Without adopting claimant's interpretation, the magistrate judge finds that ALJ Geyer failed to properly articulate why he denied the request to issue the subpoenas. ALJ Geyer's mere restatement of the Hallex requirements in his pre-hearing order, without more analysis, leaves the claimant and this court guessing why McCarthy's repeated and straightforward arguments in favor of issuance of the subpoenas failed to meet the Hallex requirements. The proposed testimony of Dr. Reardon would clarify why her opinion differs from previous treating physicians and whether her opinion conflicts with the VA's determination of disability.[3] ALJ Geyer's comments at the hearing and the timing of his pre-hearing order denying the subpoena request suggest he denied the request for impermissible reasons, presumably to claimant's detriment. This amounts to an abuse of discretion. Taylor, 528 F.2d at 1156. For this reason, the magistrate judge recommends this matter be remanded for further development of the record.

<u>Interrogatory/Subpoena Request for Dr. Odden and Additional Physical Examination</u>

On May 2, 2006, McCarthy requested that ALJ Geyer order a psychiatric consultative examination "to determine the severity of his diagnosed major depressive syndrome and anxiety." (Tr. 112-113). McCarthy recognized that his mental health would be "a key factor in determining the severity of the combination of both his mental and physical impairments" and that VA treating physician Dr. Carcoana, as well as others, have opined that his "chronic pain can exacerbate depression and vice versa." (Tr. 112). Given the ambiguous and sometimes conflicting records pertaining to his mental impairment, McCarthy sought further evaluation.

---

[3] The request for testimony from Dr. Buettner, now several years retired, is less compelling, since he may no longer be available to provide medical testimony, and his proposed testimony would go primarily to the credibility of Dr. Reardon.

(Tr. 112-113).  ALJ Geyer ordered the requested psychiatric evaluation, stating, "If that evaluation is not definitive, I will consider ordering a physical examination."  (Tr. 197).

Psychologist Ronald L. Odden ("Odden") completed a consultative exam on June 27, 2006, and prepared a Medical Source Statement of Ability to Do Work-Related Activities (Mental) dated August 14, 2006. (Tr. 799-804).  Odden found McCarthy was moderately impaired in his ability to understand and remember detailed instructions, carry out detailed instructions, and make judgments on simple work-related decisions.  Odden also found McCarthy demonstrated marked restrictions in his ability to interact appropriately with the public, supervisors, and co-workers, and that he had marked limitations in responding appropriately to work pressure and changes in the work setting. (Tr. 803). Finally, Odden opined that McCarthy is irritable, socially withdrawn, shows little tolerance of others, and has a below average attention span.  (Tr. 803).

After Odden's report was made part of the record, McCarthy encouraged ALJ Geyer to find the report definitive and issue a "fully favorable" decision without the necessity of a formal hearing.  (Tr. 345-351).  ALJ Geyer compared Odden's report with the record and concluded, "Mr. McCarthy's mental status may have declined since the alleged onset of disability on May 1, 2002."  (Tr. 191).  Based on this conclusion, ALJ Geyer wrote, "Thus I am not comfortable awarding a fully favorable decision <u>on the record</u>."  (Tr. 191) (emphasis added).  Instead of finding Odden's report definitive, ALJ Geyer indicated he intended to "go ahead with a medical consultation, as [claimant] requested," specifically an orthopedic exam, in order to "complete the record for hearing," unless claimant had undergone a recent physical exam.  (Tr. 191).  He noted that claimant had seen a physician assistant in May 2006, "but that was not a complete exam."

10

(Tr. 191).

On October 5, 2006, McCarthy provided additional medical documentation, namely a record of an August 16, 2006 visit to Dr. Peshiman, noting it was uncertain "whether a full physical examination was taken," but that McCarthy's pain had continued unabated. (Tr. 123). McCarthy again encouraged ALJ Geyer to find him "disabled" without further hearing, but stated, "If Your Honor nonetheless believes that a physical consultation is required, please advise." (Tr. 124). On October 17, 2006, ALJ Geyer determined Dr. Peshimam's physical exam on August 16, 2006, relieved the need for a physical consultative examination. (Tr. 189).[4] The requested physical consultative evaluation was never performed.

In addition to persisting in his request for a physical consultative examination, McCarthy sought to take steps to clarify ALJ Geyer's concerns regarding McCarthy's mental impairments and the alleged onset date. In particular, McCarthy suggested that ALJ Geyer's question regarding possible worsening of his mental status since the alleged disability onset date could be addressed in a single interrogatory to Odden. (Tr. 126). Further, McCarthy sought a subpoena of Odden, in the event the interrogatory answer was not definitive, to determine what records Odden reviewed in reaching his conclusions. (Tr. 126). McCarthy's proposed interrogatory and request for subpoena to psychologist Odden were intended to directly address the ALJ's "issues"

---

[4] Dr. Peshimam's impression included a suspicion of "underlying spinal pathology, which is inflammatory and not necessarily all osteoarthritic" and suspected "spondyloarthropathy besides the osteoarthritic changes and dextroscoliosis." Dr. Peshimam indicated the need for further imaging, noting the last one was well over a year earlier. (Tr. 811). Claimant argues ALJ Geyer "completely ignored this objective medical evidence of record," and the ALJ's disregard of this evidence "substantially underscores ALJ Geyer's impression that McCarthy's complaints of disabling pain 'are not entirely credible.'" Reply Brief of Daniel J. McCarthy, Doc. # 12, at 6 (citing Tr. 35, Tr. 29).

with Odden's report. ALJ Geyer denied McCarthy's subpoena request on February 21, 2007, in the same order denying the Reardon and Buettner subpoenas, which merely recited the Hallex standard as the basis for denial. (Tr. 171). The ALJ failed to act on claimant's request for an interrogatory to Odden. On February 28, 2007, McCarthy reiterated his request for the issuance of an interrogatory to Odden, or alternatively a subpoena, if ALJ Geyer determined Odden's interrogatory response was not definitive. (Tr. 180). McCarthy also requested a prehearing conference to determine "exactly what issues, if any," ALJ Geyer still had "with regard to Mr. McCarthy's entitlement to disability benefits." (Tr. 184). The ALJ did not reconsider his order and did not hold a prehearing conference.

As noted in the discussion of the Reardon and Buettner subpoena requests, ALJ Geyer, at the outset of the hearing, made a statement of concern about turning the hearing into a "full blown trial." In his decision, the ALJ discounted Odden's opinion, stating:

> [T]hese opinions are not consistent with the objective medical evidence, or the record as a whole. The record indicates that Mr. Odden examined the claimant well after his date last insured of June 30, 2005, and <u>there is no indication that Mr. Odden considered the claimant's medical records</u> prior to his date last insured. <u>It appears</u> that the opinions of Mr. Odden were based on the claimant's subjective complaints, and, as will be discussed, the claimant's subjective complaints are not consistent with the record as a whole.

(Tr. 26) (emphasis added). ALJ Geyer dismissed Odden's opinions that claimant suffered from "marked" limitations in part because they "appeared" to be based on subjective complaints. Since Odden reviewed claimant's interdependent conditions of depression and pain, some degree of reliance on the patient's reported history was inevitable. Further, the ALJ dismissed Odden's opinions on the severity of McCarthy's mental impairments because the report did not indicate that Odden had taken into account McCarthy's records going back to the time he still had insured

status. The ALJ did not find Odden's opinion definitive, yet he failed to inquire further to clarify the basis of Odden's findings. Instead, the ALJ dismissed Odden's findings and relied on the less favorable opinions of Dr. Podrygula, a non-examining psychologist who testified at the hearing.

In addition, ALJ Geyer stated the physical exam by Dr. Peshimam eliminated the need for a further medical exam, but he did not clearly find Dr. Peshiman conducted a full exam. He barely mentioned the Peshiman exam in his decision and did not appear to rely on Dr. Peshiman's findings or suggestions. Further, despite failing to order an additional medical exam, at the hearing ALJ Geyer reiterated his desire to have a medical exam completed:

> I should also put on the record that we made fairly vigorous attempts to obtain a medical doctor for testimony at hearing. They are very difficult to obtain because they want $5-600 an hour and we pay something like 150 or something maybe. At any rate, we contacted doctors in Denver, Billings, through a program called ERMS Roster. We contacted doctors in Tampa, in Jacksonville, in Denver. And we were unable to arrange any medical doctor here. <u>So there's that problem</u>.

(Tr. 937) (emphasis added). Thus, ALJ Geyer recognized the record was deficient but proceeded with his decision nevertheless.

ALJ Geyer had a responsibility to develop an adequate record regarding McCarthy's physical and mental limitations. Because ALJ Geyer discounted Odden's findings, at least in part, for lack of clarity, the ALJ was obliged to further develop the record, as requested by McCarthy through an interrogatory and possibly a subpoena to Odden. After that, if Odden's report did not definitively establish that claimant is disabled, the ALJ was obliged to follow through with his stated commitment to order a consultative medical exam. The ALJ denied all of these requests without explanation and then dismissed Odden's opinions. The ALJ's failure to develop the record as requested by McCarthy, and his failure even to explain his denials, resulted

in a gaping hole in the administrative evidentiary record.[5] These failures amount to an abuse of discretion. Remand is necessary to correct this defect.

Conclusion

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be **GRANTED** in part, defendant's Motion for Summary Judgment be **DENIED**, and this matter be **REMANDED** to the Commissioner for issuance of the requested subpoenas and order for an additional consultative medical exam, as well as rehearing before a different ALJ.

Pursuant to Local Rule 72.1(D)(3) any party may object to this recommendation on or before March 20, 2009.

Dated this 11th day of March, 2009.

                                                   /s/ *Karen K. Klein*
                                                 Karen K. Klein
                                                 United States Magistrate Judge

---

[5] Vocational Expert Warren Hagenson testified that if claimant's impairments were considered "marked" in the five areas of functioning so found by Odden, he would not be able to perform competitive employment. (Tr. 1039-1040). Claimant argues that SSR 85-15 would mandate a finding of disabled: "This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base." Brief in Support of Plaintiff's Motion for Summary Judgment, Doc. #7, at 11-12 (quoting SSR 85-15).